REISMAN CAROLLA GRAN LLP
Catherine Merino Reisman
19 Chestnut Street
Haddonfield NJ 08033
856.354.0021
catherine@rcglawoffices.com

**IN THE UNITED STATES DISTRICT COURRT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| K.N. and J.N., on behalf of J.N, <br><br> Plaintiffs, <br><br> v. <br><br> GLOUCESTER CITY BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No. 17- |

**COMPLAINT**

**I.    INTRODUCTION**

1.     This action arises under Title II of Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and the New Jersey Law Against Discrimination, N.J. Stat. § 10:1-2 (NJLAD). This is an appeal from the decision, dated September 8, 2017, of a New Jersey Administrative Law Judge (ALJ), attached as Exhibit 1 (*Dec.*).

2.     J.N., a young man with disabilities and a student in the school district operated by Gloucester City Board of Education (Board or District) and his parents K.N. and J.N. (Parents), challenge the discriminatory actions of the Board in denying J.N. access to its after school program during the fall of 2013 and the entire 2014-2015 school year.

3.     It is uncontroverted that J.N. successfully attended the after school program during the spring of 2014, when he had the support of a special education teacher and two aides.

Parents requested that the Board memorialize this arrangement in J.N.'s Individualized Educational Program (IEP) to ensure continued access to extracurricular activities. The Board refused to do so, stating that J.N. did not need access to extracurricular activities to receive a free appropriate public education (FAPE).

4. J.N.'s Case Manager testified that a federal grant, through the 21st Century Community Learning Center (CCLC) Program, funded the After School Program. *Dec.* at 3. The federal government awarded these grants pursuant to Title IV, Part B of No Child Left Behind. The CCLC Program included in its mission increasing positive student behavior by infusing social, emotional, and character development into the program.

5. The Gloucester City after school program was "designed to address the education, recreational, social, cultural, emotional, and physical needs of the students." In addition to academic support, the program included "sports, yoga, kickboxing, theater activities, cooking, science activities, jewelry making, arts & crafts, and team-building activities." New Jersey Principals & Supervisors Association, 6th Annual Statewide After School Showcase, at 5, available at http://www.state.nj.us/education/students/safety/afterschool/events/showcase/2014/booklet.pdf ).

6. On January 22, 2015, Parents filed a petition for due process, attached as Exhibit 2, alleging, *inter alia*, that the Board violated Section 504 and the ADA by failing to afford J.N. equal access to the after school program. *See* Exhibit 2, Petition, at ¶¶ 20, 25, 26, 41-47. Parents, on behalf of J.N., appeal from the denial of relief under Section 504 and the ADA.[1]

## II.   JURISDICTION AND VENUE

7. Jurisdiction is based upon 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. Jurisdiction is also based upon 42 U.S.C. §12133 and

---

[1] Parents also asserted claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (IDEA). They do not appeal from the decision under IDEA.

Section 504, 29 U.S.C. § 794(a). This Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

8. Throughout his education, J.N. has been eligible for special education and related services under IDEA and no party disputes his eligibility for these services, nor his entitlement to the protections of the ADA, Section 504, and the NJLAD. Plaintiffs have fully exhausted administrative remedies of the non-IDEA federal law claims in this Complaint, as required by the 20 U.S.C. § 1415(*l*).

9. This civil action is timely filed under 20 U.S.C. §1415(i)(2)(B), as the decision of the ALJ was rendered on September 8, 2017, and this action is filed within 90 days of that decision. New Jersey state law contains no explicit time limitation for bringing such an action.

10. Venue in this district is proper under 28 U.S.C. § 1391(b).

### III. PARTIES

11. J.N., a minor, lives with his father, J.N., and his mother, K.N., in Gloucester City, New Jersey, within the area served by the Board.

12. J.N. has impairments that substantially limit him in major life activities, and thus is entitled to the protections of the ADA, Section 504 and the NJLAD.

13. The Board is responsible for honoring the substantive and procedural rights of eligible children under the ADA, Section 504 and the ADA. The Board is a recipient of federal financial assistance.

14. The Board is a public entity responsible for compliance with the guarantees of Title II of the Americans with Disabilities Act.

15. The Board is a public accommodation subject to the NJLAD.

IV. **STANDARD OF REVIEW**

16. A federal district court reviewing an administrative law judge's decision in a special education case applies a "modified *de novo*" standard of review of factual findings. Pursuant to this standard, "a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.' [citation omitted]. In this context, the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). This is a "clear error" standard of review. "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." *Id.*

17. In contrast, "the district court owes no deference to conclusions of law drawn by a state or local educational agency." *In re Educational Assignment of Joseph R.*, 318 F. App'x 113, 118 (3d Cir. 2009); *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp. 2d 459, 464 (D.N.J. 2013).

18. When a decision is not thorough and careful, federal courts should not defer to the administrative officer's factual findings. *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194-1195 (9th Cir. 2017); *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 534 (2d Cir. 2017) (to merit deference, factual findings must be reasoned and supported by the record); *F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499, 514 (S.D.N.Y. 2013)

V. **THE LEGAL FRAMEWORK**

   *SECTION 504 AND THE ADA*

19. "There are three primary and overlapping pieces of federal legislation applicable" to these claims: IDEA, Section 504 and Title II of the ADA. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016).

20. IDEA guarantees "individually tailored educational services," but the ADA and Section 504 "promise non-discriminatory access to public institutions . . . to root out disability-based discrimination, enabling each covered person . . . to participate equally to all others in public facilities and federally funded programs." *Fry v. Napoleon Cmty Sc.*, 137 S. Ct. 743, 756 (2017)

21. "Section 504 . . . is broader than the IDEA; it is concerned with discrimination in the provision of state services to all individuals with disabilities. . . . Section 504's provisions are not expressly affirmative in nature, but the Rehabilitation Act empowers federal agencies to devise regulations aimed at preventing prohibited discrimination." *Id.* at 1203.

22. Section 504 establishes a "free appropriate public education" obligation that differs from IDEA's FAPE obligation.

   a. 504 FAPE requires "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons *as adequately as the needs of nonhandicapped persons are met* and (ii) are *based upon adherence to procedures* that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(b)(1).

   b. Thus, "Section 504's regulations gauge the adequacy of services provided to disabled individuals by comparing them to the level of services provided to individuals who are not disabled." *A.G.*, 815 F.3d at 1203.

23. Congress modeled Title II of the ADA after Section 504. "Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together." *J.S. v. Houston Cnty. Bd. of Educ.*, No. 15-14306, 2017 U.S. App. LEXIS 19007 (11th Cir. Oct. 2, 2017)

24. A student bringing suit under Section 504 or Title II of the ADA "must show: (1) [he] is a qualified individual with a disability; (2) [he] was denied 'a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services;' and (3) the program providing the benefit receives federal financial assistance [for 504 liability]." *A.G.*, 815 F.3d at 1204.

    a. A plaintiff may satisfy prong two of this test "by showing that the federally funded program denied [him] services that [he] needed to enjoy meaningful access to the benefits of a public education that were available as reasonable accommodations." *Id.*

    b. "A plaintiff can also satisfy prong two by showing that the program denied [him] meaningful access to public education through another means, such as by violating a regulation that implements section 504's prohibitions. *Id.*

25. Exclusion and isolation from typical peers on the basis of disability "implicate those further, intangible consequences of discrimination" contemplated by *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), "such as stigmatization and deprivation of opportunities for enriching interaction with fellow students. These injuries reach beyond a misdiagnosis or failure to provide appropriate remedial coursework." *J.S.*, 2017 U.S. App. LEXIS, at *11-*12.

26. A tribunal errs as a matter of law when it analyzes a claim that a school district unlawfully excluded an IDEA-eligible student as merely a FAPE claim. *J.S.*, 2017 U.S. App. LEXIS 19007, at *12.

27. To prevail on a claim for damages under Section 504 and the ADA, a plaintiff must show that an official, who had authority to address the alleged discrimination and to institute corrective measures, had actual notice of the discrimination. *Doe v. Mercy atholic Med. Ctr.*, 850 F.3d 545, 565-566 (3d Cir. 2017).

*NJLAD*

28. The NJLAD provides: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons." N.J. Stat. § 10:1-2.

29. Federal courts interpret failure to accommodate claims under the NJLAD in accordance with the ADA. *Armstrong v. Burdette Tomlin Mem. Hosp.,* 438 F.3d 240, 2246 n.12 (3d Cir. 2006).

## VI. FACTS

30. With regard to the fall of 2013, the ALJ, accepting the testimony of the witnesses as fact, *Dec.* at 13, found:

   a. J.N. exhibited behavioral problems, aggression, self-injurious behavior and tantrums in the after school program in the fall of 2013. *Dec.* at 4.

   b. K.N. was concerned that the after school program aide did not have enough training. *Id.*

   c. The aide resigned in October 2013, and J.N. could no longer attend the program. *Id.*

   d. School Superintendent Joseph Rafferty knew in the fall of 2013 that J.N. sought equal access to the after school program. *Id.*

   e. J.N.'s progress reporting during the first marking period of 2013-2014, when he was attending the after school program, showed no incidents of behavior. During the second marking period, after J.N. stopped attending the after school program, J.N.'s behaviors increased in school. *Id.* at 6.

31. With regard to the spring of 2014, the ALJ found:

   a. J.N. attended the after school program with the support of a special education teacher overseeing the program, and two aides, fading to one aide. *Dec.* at 4, 10.

    b. During the spring of 2014, when J.N. was attending the after school program with these increased supports, he "made significant academic progress" in school. *Dec.* at 5.

    c. "In the spring [of 2014], from January to June, with the addition of the teacher and the aide, J.N. could access the [after school program], and his aggressive behaviors decreased." *Dec.* at 7; *see also Dec.* at 11.

32. With regard to the fall of 2014, the ALJ found:

    a. In October 2014, J.N.'s aide in the after school program resigned "because of injuries she had sustained." *Dec.* at 12.

    b. In November 2014, the Board proposed an IEP that stated J.N.'s behaviors needed stabilization before participation in extracurricular activities could be considered. *Dec.* at 7.

    c. In the fall of 2014, the Board did not begin taking data on J.N.'s behaviors until the end of November. *Id.* The Board collected no data on J.N.'s behaviors while he attended the after school program. *Id.* at 8.

33. The parties stipulated that the Director of Special Services and K.N. would both testify that the Director told K.N. in June 2014 that the Board would not put attendance in the after-school program for J.N. on the IEP because he did not need it in order to receive a FAPE.

34. The parties also stipulated that K.N. would testify that J.N. successfully attended an after-school program with access to typical peers J.N. has attended an after-school program and extended school year program with access to typical peers, with dedicated 1:1 support (and access to a group aide) from July to December 2015 and dedicated 2:1 support, from January 2016 to the present, at parental expense.

35. The ALJ's factual findings were contradictory, not well-reasoned, and not supported by the record, for the following reasons:

    a. The ALJ found that during the first marking period of the 2013-2014 school year, J.N. showed no incidents of behaviors *at any time*. *Dec.* at 6. During the fall of 2013, J.N. stopped attending the after school program in the first marking period (in October). *Dec.* at 4. J.N. attended the after school program with increased support in the

8

spring of 2014. *Dec.* at 5. During the spring of 2014, J.N.'s aggressive behaviors decreased. *Dec.* at 7. In fact, J.N.'s progress reports from the spring of 2014 (the semester he successfully attended the after school program) indicate that J.N. was demonstrating a "huge decrease in aggressive behaviors." Thus, the Administrative Law Judge's conclusion that attendance at the after school program correlated with problem behaviors is neither well-reasoned nor supported by the record.

b. The ALJ repeatedly acknowledged the testimony of District witnesses establishing that the Board failed to collect data on J.N.'s behaviors until the fall of 2014. *Dec.* at 6 (aide collected data beginning in November 2014); *id.* (no data collection on behaviors in the first marking period of 2013-2014); *id.* at 7 (during the second marking period of 2013-2014 "there was no data collection to see if his behaviors were caused by illness or something else"); *id.* (although formal data collection on behavior did not start until the end of November 2014, progress report for the first marking period showed improvement in behavior); *id.* at 17 ("numerical data collection was haphazard and missing, although it was improving by 2015"). The ALJ found that the Board collected no data on behavior at any time that J.N. was attending the after school program. *Id.* at 8. Notwithstanding this fact, she appeared to rely upon the non-expert testimony of the case manager and the special education teacher that the afteschool program "exacerbated" J.N.'s behaviors. *Id.* at 8. There was no data to support that conclusion, even if those witnesses had the requisite expertise in behavior analysis (which they did not).

c. The ALJ's finding that J.N.'s failure to return to the after school program was "not the fault of the petitioners or the District," *Dec.* at 20, is not well-reasoned and has no factual basis. The ALJ acknowledges that J.N. successfully accessed the afterschool program in the spring of 2014 with the support of a special education teacher supervising the program, with two aides faded to one aide. *Dec.* at 11. The ALJ acknowledges that the Board refused to provide those supports during the 2014-2015 school year. These findings of the ALJ support Parents' claims under the ADA, Section 504 and the NJLAD.

**COUNT I**
**ADA**
**SECTION 504**
**NJLAD**

36. Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

9

37. A school district violates Section 504 and the ADA if it fails to comply with one of the regulations implementing Section 504 and such violation denied the student meaningful access to a public benefit. *A.G.*, 815 F.3d at 1204.

38. Section 504 regulations require that school districts provide regular or special education and related aids and services that "are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons." 34 C.F.R. § 104.33(b)(1). Denying appropriate behavioral supports in a program open to all children will violate this regulation if it results in a lack of access to the program. *A.G.*, 815 F.3d at 1205.

39. "A plaintiff may establish prohibited discrimination under section 504 and Title II by showing that a public entity denied her a 'reasonable accommodation' necessary to achieve meaningful access to her education. To succeed on such a claim, a plaintiff must show that the 'defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the program or activity,' 1 Americans with Disabilities: Practice and Compliance Manual § 1:247 (2015); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999), and that the accommodation would have enabled [him] to meet the 'program's essential eligibility requirements.'" 815 F.3d at 1206 (quoting *E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013)).

40. The ADA and Section 504 require that covered entities administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d); 28 C.F.R. § 41.51(d)

41. The NJLAD provides: "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places

of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons." N.J. Stat. § 10:1-2.

42. The NJLAD requires that places of public accommodation "shall, to the extent reasonable, afford goods, services, facilities, privileges, advantages and accommodations to a person with a disability in the most integrated setting appropriate to the needs of that person." N.J.A.C. § 13:13-4.4.

43. The ALJ committed legal error because she failed to address the discrimination claims under the ADA and Section 504 and based her decision on the conclusion that attendance at the after school program was not necessary for a FAPE:

   a. The ALJ acknowledged that when the District provided a special education teacher and trained aides in the spring of 2014, J.N. successfully attended the after school program. In light of the fact that these supports were available as a reasonable accommodation, the ALJ erred as a matter of law in concluding that provision of one untrained aide provided J.N. with non-discriminatory access to the after school program.

   b. The ALJ reached this erroneous legal conclusion because she did not believe that attendance at the after school program was necessary for FAPE. However, whether a service is necessary for FAPE does not dispose of the question of whether the Board acted in a discriminatory manner.

   c. Unnecessary social isolation is a form of actionable discrimination, whose injuries reach beyond those that can be redressed under IDEA. *J.S.*, at *11-*12; *see also K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005). By failing to provide J.N. with the supports he needed to access the after school program, the Board subjected him to unnecessary social isolation and discrimination, in violation of state and federal law.

44. The Board intentionally and purposefully violated J.N.'s rights under the Section 504, the ADA, and the NJLAD by:

   a. subjecting J.N. to discrimination on the basis of disability;

   b. excluding J.N. from participating in and denying him the benefit of District services, programs, and activities on this basis of his disability;

    c.   denying J.N. the opportunity to participate in and benefit from aids, benefits and services on a basis equal with that afforded others;

    d.   failing and refusing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination against J.N.;

    e.   failing to administer services, programs, and activities in the most integrated setting appropriate to J.N.'s needs; and

    f.   limiting J.N. in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service.

45.    The ALJ committed legal error in concluding that J.N. did not have an entitlement to supports appropriate for his attendance in the after school program. *See Dec.* at 17. Because such supports were available as a reasonable accommodation, J.N. did have an entitlement to those supports.

46.    The ALJ found that the school superintendent Joseph Rafferty had actual notice of Parents' request for equal access to the after school program.

47.    The ALJ committed legal error in concluding that the fact that the Board no longer provided the after school program after the spring of 2015 precluded recovery. J.N. is still entitled to remedies for discrimination that occurred in the fall of 2013 and the 2014-2015 school year, notwithstanding the program's subsequent cessation.

48.    The Decision in this matter regarding the discrimination claims is not thorough and well-reasoned. It contains no analysis of those claims and disposes of them based upon the conclusion that attendance in the after school program was not necessary for FAPE under IDEA.

**RELIEF REQUESTED**

WHEREFORE, plaintiffs respectfully request that the Court receive he record of the administrative proceeding and such additional evidence as may be required to render a just decision and award the following relief:

a) Declare that the District discriminated against J.N. in violation of Section 504, the ADA, and the NJLAD by failing to provide reasonable accommodations that would have allowed him to access the after school program;

b) Declare that the District has discriminated against J.N. because of his disabilities and because of the nature or severity of his disabilities;

c) Award compensatory damages;

d) Award compensatory education;

e) Award plaintiffs their reasonable attorney's fees and expert witness costs, including the fees and costs incurred in this action;

f) Award such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

*s/ Catherine Merino Reisman*
Catherine Merino Reisman
Reisman Carolla Gran LLP
19 Chestnut Street
Haddonfield, NJ 08033
T: 856.354.0021
F: 856.873.5640
catherine@rcglawoffices.com

Dated: October 6, 2017