**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

K.N. and J.N., on behalf of
J.N.,

        Plaintiffs,     Civil No. 17-7976 (NLH/JS)

    v.                  **OPINION**

GLOUCESTER CITY BOARD OF
EDUCATION,

        Defendant.

**APPEARANCES:**

CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033-1810

    *Attorney for Plaintiffs K.N. and J.N, on behalf of J.N.*

BRETT E.J. GORMAN
PARKER MCCAY PA
9000 MIDLANTIC DRIVE
SUITE 300
MT. LAUREL, NJ 08054

    *Attorney for Defendant Gloucester City Board of Education.*

**HILLMAN, District Judge**

    This case concerns the appeal of a decision of an administrative law judge ("ALJ") finding no violations of federal and state anti-discrimination laws. The Defendant school district provides services for an autistic child, J.N, through an after-school program ("ASP"). Presently before the Court are Defendant's Motion for Reconsideration and Motion to

Certify an Issue for Interlocutory Appeal (the "Motion to Certify" and, collectively, the "Motions"). As described herein, the Court will deny Defendant's Motion for Reconsideration and deny Defendant's Motion to Certify.

**BACKGROUND**

This Court will rely upon the facts stated in its March 29, 2019 Opinion and will only restate those facts as necessary to the disposition of the Motions. Since this Court filed its March 29, 2019 Opinion and Order, Defendant filed its Motions for Reconsideration and to Certify an Issue for Interlocutory Appeal. The Motions have been fully briefed by the parties and are ripe for adjudication.

**ANALYSIS**

**A.  Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

**B.  Motion for Reconsideration Standard**

Local Rule 7.1(i) allows a party to file a motion with the Court requesting the Court to reconsider the "matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." Under Local Rule 7.1(i), the moving party must demonstrate "'the need to correct a clear error of law or fact or to prevent manifest injustice.'" Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478

(D.N.J. 2014) (citations omitted).  In doing so, the moving party must show the "'dispositive factual matter or controlling decisions of law'" it believes the court overlooked in its initial decision.  Mitchell, 913 F. Supp. 2d at 78 (citation omitted).  A mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law.  United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

**C.    Defendant's Motion for Reconsideration**

Defendant moves for reconsideration of the Court's decision to grant summary judgment as to Plaintiff's New Jersey Law Against Discrimination ("NJLAD") claim.  Defendant's argument is threefold.  First, Defendant argues Plaintiffs were required to commence a proceeding before the New Jersey Division of Civil Rights ("NJDCR") or file their NJLAD claim directly in New Jersey Superior Court.  A failure to do so, according to Defendant, requires dismissal on procedural grounds.  Second, Defendant argues that even if the NJLAD claim may remain before this Court, Defendant should be given an opportunity to engage in discovery and present the claim before a jury, assuming a genuine issue of material fact remains.  Plaintiffs disagree on both points, arguing that it was proper to bring the NJLAD claim first in federal district court and that Defendant has affirmatively waived its right to a jury trial or further

discovery in this case. Third, Defendant argues the differing burdens at the administrative and district court level require the Court to reconsider its decision.

The Court will first address the question of whether administrative exhaustion before the NJDCR is required. Plaintiffs argue that "NJLAD complainants, in the ordinary course, are entitled to proceed directly to court without exhausting administrative remedies anywhere." (Pls.' Opp'n Br. 4.) "[T]he NJLAD does not have an exhaustion of remedies requirement." Weisberg v. Realogy Corp., No. 12-30 (JLL), 2012 U.S. Dist. LEXIS 38931, at *7 (D.N.J. Mar. 22, 2012). Defendant's argument admits this much, saying "[i]nstead of the above-discussed proceedings before the [NJDCR] . . . a complainant may file a complaint in the Superior Court of New Jersey." (Def.'s Mot. for Recons. 6.) The Court finds it did not err in refusing to dismiss the NJLAD claim because NJLAD claims are not subject to an administrative exhaustion requirement.

Thus, the remaining argument for dismissal made by Defendant under this category is whether a plaintiff may, instead of filing in the appropriate New Jersey Superior Court, file directly in a federal district court. The relevant text of the NJLAD states the following: "[a]ny complainant may initiate suit in Superior Court under this act without first filing a

complaint with the division or any municipal office." N.J. STAT. ANN. § 10:5-13 (emphasis added). It appears, on its face, that a plaintiff may bring an NJLAD claim - if the administrative route is not taken – in New Jersey Superior Court. Defendant, however, appears to argue that an NJLAD claim must be filed in New Jersey Superior Court, and that NJLAD plaintiffs may only have their cases heard in federal district court if it is removed by the defendants in the action. In other words, Defendant appears to argue the permissive language of the NJLAD should be interpreted to require all NJLAD claims to be brought in the first instance in New Jersey Superior Court.

But, that has clearly not been the case in the District, as many NJLAD cases are initiated directly in federal district court. As this District has held for a number of years, claims under § 10:5-13 – the section cited here by Defendant – "are consistently resolved by federal courts." Kessler Inst. for Rehab. v. Mayor of Essex Fells, 876 F. Supp. 641, 664 (D.N.J. 1995). The basis for allowing these claims to be heard initially in federal court is the permissive language of the statute, which states those claims "may" be brought in New Jersey Superior Court. Id. at 664-65. More recent case law shows that this remains the practice in this District. See, e.g., Hashem v. Hunterdon Cnty., No. 15-8585 (FLW/DEA), 2016 U.S. Dist. LEXIS 134055, at *28 (D.N.J. Sept. 29, 2016)

5

(allowing an NJLAD claim to be brought directly in federal court); Waters v. ShopRite Supermarkets, Inc., No. 10-cv-2986 (WJM), 2011 U.S. Dist. LEXIS 139307, at *9 (D.N.J. Dec. 5, 2011) (holding no administrative exhaustion was required for an NJLAD claim and allowing the claim to proceed directly in federal court). Accordingly, this Court finds it did not err in refusing to dismiss the NJLAD claim because an NJLAD claim may be brought directly in federal court.[1]

---

[1] It follows from Defendant's argument that the New Jersey legislature would have the power to limit the jurisdiction of the federal courts by requiring that its courts, and only its courts, hear a state statutory claim. This position is of doubtful constitutionality and conflicts with a century of settled federal law. See MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1109 (3d Cir. 1995) ("It does not follow, however, that a state may by statutory or decisional law restrict the subject matter jurisdiction of the federal courts. It is axiomatic that, because its subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine that jurisdiction vel non, even when the substantive right at issue is a creature of the state. . . . . That a state simply has no power to divest a federal court of its congressionally conferred subject matter jurisdiction, has been settled law for nearly a century." (citations omitted and emphasis in original)).
    Plaintiffs have asserted a federal statutory claim cognizable in federal court and have the right to pursue that claim, and any pendent claims, in this forum. 28 U.S.C. § 1367. Further, if Plaintiffs were only able to assert a NJLAD claim in state court, they would be forced to assert their federal claims in state court or run the risk of running afoul of the entire controversy doctrine, in effect denying this Court jurisdiction over a federal statutory claim. The only fair interpretation of the permissive language of the state statute is that it limits its express reach to the New Jersey legislature's proper constitutional lane – the jurisdiction of the state courts.

Second, Defendant argues that the Court erred in deciding the NJLAD claim without directing discovery to be completed or permitting a jury trial to be held. Plaintiffs counter that Defendant waived its right to discovery and a jury based on the joint discovery plan submitted and Defendant's waiver of its jury trial right by not requesting one in its Answer. The Court will address each argument in turn.

First, the Court will address whether it erred in deciding the NJLAD claim without first allowing Defendant discovery. The Court did not err. The joint discovery plan submitted by the parties references the claims at-issue, federal and state anti-discrimination laws, and states that no discovery is needed. Plaintiffs' Complaint explicitly states an NJLAD claim. Defendant cannot complain now that the Court did not permit discovery when it previously stated to the Court it did not wish to engage in discovery, knowing an NJLAD claim had been asserted.

Second, the Court will address whether it erred in deciding the matter without submitting it to a jury. The Court did not err for two reasons. First, Defendant admits that the issue may only go before a jury "[i]f there are any issues of material fact." (Def.'s Mot. for Recons. 7.) In other words, Defendant states there is no right to a jury trial unless there is a genuine issue of material fact that must be determined by a

jury.  Defendant cites no genuine issue of material fact that the Court incorrectly decided.  More importantly, Defendant did not include a jury demand in its answer – nor did Plaintiffs include one in their Complaint.  Under Federal Rule of Civil Procedure 38(d), "[a] party waives a jury trial unless its demand is properly served and filed."  Defendant did not do so.  The Court did not err in deciding the NJLAD claim without first requiring discovery or resorting to a jury.

Finally, Defendant argues the Court erred by not considering the differing burdens at the administrative and the district court level.  It appears Defendant's complaint is procedural in nature.  Defendant argues that it possessed the burden of production and proof before the ALJ while Plaintiffs possess the burden of persuasion here.  Plaintiffs do not directly respond to this argument.  The Court finds this argument does not bear on the Court's decision.  The parties agreed to have the claims be considered on the administrative record and the burden of persuasion rested with Plaintiff.  Whether the burden was different is of no moment, as the correct burden was applied here – Plaintiff maintained the burden of persuasion.

The Court acknowledges, however, it was incorrect in stating that the ALJ erred in not finding Defendant had violated the NJLAD.  No NJLAD claim was presented to the ALJ and

8

therefore could not have been decided – rightly or wrongly – by the ALJ.  Even though the nomenclature used by the Court was incorrect, its ruling was not.  Nowhere in Defendant's Motion for Reconsideration does Defendant state that the Court's ruling, on its merits, was incorrect as to the NJLAD claim.  In fact, Defendant states "admittedly, the NJLAD and ADA claims involve similar analysis."  (Def.'s Mot. for Recons. 9.)  The law states this more strongly: "NJLAD relies on the <u>same</u> analytical framework as the Americans with Disabilities Act." <u>D.G. v. Somerset Hills Sch. Dist.</u>, 559 F. Supp. 2d 484, 502-03 (D.N.J. 2008) (emphasis added).  The Court was therefore correct in finding an NJLAD violation on the administrative record as it found an ADA violation.  Defendant does not ask the Court to reconsider the substance of the NJLAD or ADA violation, which appears to be an admission (for this motion only), that the decision was substantively correct.  There is no reason for the Court to revisit those decisions now.[2]  Accordingly, the Court denies Defendant's Motion for Reconsideration in its entirety.

    **D.    Motion to Certify Issue for Interlocutory Appeal**

---

[2] The Court also notes Defendant's concerns about the precedent this case may set.  These concerns are misplaced, as this case presents a peculiar factual scenario.  Defendant, as well as other litigants, may avoid this situation in the future by pursuing discovery and making clear to the Court that it wishes the court to only address the appeal of the administrative record rather than summary judgment on all claims.

9

Defendant also requests that the Court certify the issue of the standard of review for factual issues in this matter so it may be appealed to the Third Circuit. Essentially, Defendant argues that this Court's factual determinations may have been different under the standard of review advocated by Defendant than under the one utilized by the Court, so an interlocutory appeal may materially advance this case. Plaintiff disagrees, arguing the Court accepted the material underlying factual determinations but came to a different legal conclusion. Therefore, the standard of review used for factual determinations has no material effect on the case and an interlocutory appeal could not advance the case in any material way.

Generally, the courts of appeals only possess "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Federal Rule of Civil Procedure 54(b) states the controlling test for whether a decision of the Court may be considered final, stating:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In other words, if a decision of the Court decides a party is liable on certain claims, but reserves decision on the proper

relief for those liabilities, the decision is not yet final under Rule 54(b). The parties agree: the Court's March 29, 2019 Opinion and Order do not constitute a final decision, as the question of a remedy is yet to be determined.

There are, however, exceptions allowing a federal appeals court, here the Third Circuit, to review a non-final decision of a federal district court. One of those exceptions is when the district court judge certifies an issue for an interlocutory appeal under 28 U.S.C. § 1292(b). That statute provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that [1] such order involves a controlling question of law as to which there is [2] substantial ground for difference of opinion and that an immediate appeal from the order [3] may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b); see also Kapossy v. McGraw-Hill, Inc., 942 F. Supp. 996, 1001 (D.N.J. 1996) (stating the same test). Thus, these three factors must be considered by the district court in determining whether interlocutory appeal is appropriate. As Defendant points out, "[t]he certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present."

11

Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976) (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974) (en banc)).

A decision is controlling only if "its incorrect disposition would require reversal of the final judgment." Kapossy, 942 F. Supp. at 1001. Plaintiff argues the Court's decision on the factual questions presented would not be affected by a different standard of review, as every contested factual question was upheld. Defendant asserts that this Court disagreed with the factual findings of the ALJ and that a different standard of review would have changed the factual findings and thus the decision in this case. The Court will review the factual decisions where Defendant asserts the Court disagreed with the ALJ to determine whether or not (1) the Court actually disagreed or (2) if it disagreed, whether a different standard of review would have caused the Court to be of a different opinion.

Before doing so, the Court notes the issue of law that is contested. Normally, in an IDEA case, the Court would apply a modified de novo standard of review to the factual findings made by an ALJ. E.I.H. v. Fair Lawn Bd. of Educ., 747 F. App'x 68, 71 (3d Cir. 2018). Under that standard, a district court would be required to give "due weight" to the factual findings of an ALJ, and, if the district court departs from the ALJ's factual

12

findings, it must explain its reasons for doing so. Id. (citing S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). The Third Circuit has yet to determine, in a case such as this where IDEA exhaustion was completed but an IDEA claim has not been appealed, whether the modified de novo or a de novo standard of review applies. T.F. v. Fox Chapel Area Sch. Dist., 589 F. App'x 594, 598 (3d Cir. 2014). The Third Circuit in T.F. suggested that a de novo standard of review may be appropriate in such a situation and that under that standard, no due weight is to be given. As suggested by the procedural posture, the Court here utilized a de novo standard of review for both the factual and legal findings of the ALJ.

First, Defendant asserts the Court found that the ALJ committed a factual error in finding the factors of transferring schools and bussing contributed to J.N.'s behavioral problems in fall 2014. (March 29, 2019 Opinion 18.) Defendant is correct, the Court found that this factual finding of the ALJ did not match the chronology explained by the ALJ and the parties and thus disagreed with the ALJ's factual finding. But, Defendant's argument omits that that it admitted the ALJ's factual finding was erroneous on this particular issue. It is improper for Defendant to use this aspect of the decision to support its Motion to Certify. In any event, it is clear that whether the

Court utilized a de novo or modified de novo standard of review, the Court would have come to the same conclusion as this finding was contradicted by the ALJ's own opinion.

Second, Defendant argues that the Court found the reasons for J.N.'s behaviors were a lack of staffing in addition to the factors the ALJ listed. Defendants also argue that the Court found these supports would have altered J.N.'s behaviors. Both of these assertions are a misinterpretation of the Court's Opinion and would not have been decided differently under the de novo or modified de novo standard of review.

The Court ruled that J.N.'s behaviors were a result of his autism. This fact is undisputed by the parties. The Court then ruled - based on a legal interpretation of the facts as found by the ALJ and this Court - that only a special education teacher supported by at least one one-to-one aide could provide J.N. with meaningful access. The Court did not opine on whether the necessary supports would have altered J.N.'s behaviors, just that the supports the Court ordered would be enough to maintain J.N. and allow him to attend the ASP. Regardless, the Court's ruling here was legal, not factual, in nature and thus does not bear on the question presented by Defendant.

Third, Defendant asserts that the Court disagreed with the ALJ as to whether the ASP was a component of FAPE and should have been included in an IEP. That question was not before the

Court and was not analyzed by the Court.  More importantly, Defendant has, again, misinterpreted the Court's Opinion.  The Court merely observed that J.N.'s activities in the ASP were similar to the activities he participated in during the school day.  This is supported by the factual findings made by the ALJ, which the Court accepted.  There was no disagreement here.

Fourth and finally, Defendant asserts that there are differences between a "school district's operations and legal requirements during the school day and during an after school program that would further distinguish those programs . . . ." (Def.'s Reply Br. 3.)  Defendant argues that staffing requirements and abilities are different based on the contract between it and the teachers' union.  This is relevant, according to Defendant, because the Court ruled that the ASP was an extension of the school day.  As to the first point, neither the ALJ nor the Court was presented with the question of whether staffing ability was diminished at the ASP because of contractual concerns.  It was not material to the opinion, and thus cannot be a basis for this Court to certify an interlocutory appeal.  Moreover, as discussed supra, the Court did not rule that the ASP was an extension of the school day but was merely illustrating the point that there were similarities between J.N.'s activities at school and in the ASP.  As there was no factual disagreement between the Court's findings and the

ALJ's findings, this is also not a basis on which interlocutory appeal could be granted.

This Court will not certify its Opinion for an interlocutory appeal.  Except for one factual disagreement, which Defendant admitted was incorrectly decided by the ALJ, this Court adopted the factual findings of the ALJ.  While the Court came to a different legal conclusion than the ALJ, the parties agree that the Court utilized the correct standard of review for legal decisions.  Therefore, because the Opinion would not have changed based on the standard of review utilized for these factual questions, the Court – in its discretion – declines to certify its Opinion for interlocutory appeal. Defendant's Motion to Certify will be denied.

## **CONCLUSION**

For the reasons stated herein, the Court will deny both Defendant's Motion for Reconsideration and Motion to Certify.

An appropriate Order will be entered.

Date: August 27, 2019         s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.